IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA A. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-105-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Cynthia A. Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 20, 1961, and was forty-one years old at the time of the administrative hearing. She has a high school education and has past relevant work as a nurse's aide and kitchen helper (Tr. 17, 22). The claimant alleges that she has been unable to work since July 1, 2007, because of depression, degenerative disc disease, pain, and numbness (Tr. 106).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 25, 2008. The Commissioner denied her application. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 14, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the additional physical limitations that she can only occasionally stoop, crouch, crawl, kneel, balance, and climb stairs and never climb ladders (Tr. 14). While the ALJ concluded that the claimant was unable to return to her

past relevant work, he found that there was work the claimant could perform in the national economy, *i. e.*, charge account clerk and fishing reels assembler (Tr. 18).  Thus, the ALJ concluded that the claimant was not disabled (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by failing to find her depression to be a severe impairment at step two due to an improper evaluation of the medical evidence; (ii) by failing to analyze the effect of her obesity on her RFC; and (iii) by failing to properly analyze her credibility.  The Court finds that the ALJ failed to properly analyze the medical evidence of record.

The claimant received most of her medical treatment at Central Oklahoma Family Medical Center (COFMC) from Dr. Umar Saeed beginning in July 2007.  The claimant was treated at that time for low back pain and worsening neck pain and was prescribed Ibuprofen, Flexeril, Medrol, and Hydrocodone (Tr. 238).  On August 3, 2007, Dr. Saeed noted that claimant had been unable to sleep at night, "[s]tays propped up at night most of the time[,]" and Lortab was the only medication that helped claimant's pain (Tr. 232). Shortly thereafter, the claimant was diagnosed with degenerative joint disease of the spine in the lumbar or lumbosacral regions, and she was noted to have worsening lower back pain with focal flares, limited motion, and stiffness (Tr. 227).  In September 2007, the claimant was prescribed Klonopin for anxiety and referred to psychiatry (Tr. 226). She frequently complained of fatigue and malaise and Dr. Saeed noted that claimant could be suffering from fibromyalgia (Tr. 210, 212).  Dr. Saeed also noted that the

claimant had "been informed by pain management Dr. Ameen that she needed surgery" although there are no medical records directly from Dr. Ameen (Tr. 208). The claimant was referred to Dr. Juan R. Villazon, M.D. for a neurological evaluation and an EMG of her lower back and lower and upper extremities (Tr. 265). The neurological evaluation revealed that claimant exhibited antalgic guarding of her back and walked with an antalgic gait, claimant had a positive straight leg raising test and bilateral Tinel test, and mild degenerative changes in the disks (Tr. 275). Dr. Villazon wrote that while her EMG was normal, his clinical impression was that claimant had facet syndrome and carpal tunnel syndrome, characterized by severe numbness in the hands, positive Tinel and compression test on the left wrist, and focal tenderness of the right elbow (Tr. 265, 269). In addition, Dr. Villazon noted that it was "not unusual" for an EMG to be normal in cases of small fiber neuropathy and that he was going to treat her with Neurontin and wrist splints (for the carpal tunnel syndrome) (Tr. 308).

On July 29, 2008, claimant's counsel Paul B. Tucker, LCSW submitted a letter stating that he had met with the claimant that day on referral from Dr. Angela Houston, a psychiatrist at COFMC who had been treating claimant since February 2008 (Tr. 374). Mr. Tucker went on to state that "Dr. Houston has diagnosed her with Bipolar Disorder. In assessing her, I feel that she has significant anxiety symptoms which in combination with her Bipolar symptoms prevent her from gainful employment at this time" (Tr. 374). Mr. Tucker submitted another letter on September 29, 2008 in which he stated that claimant was "experiencing ongoing problems with depression and anxiety which appear

to significantly impair her social and occupational functioning" (Tr. 377). Mr. Tucker when on to state that the claimant's "symptoms in combination would continue to appear to prevent her from gainful employment at this time" (Tr. 377). Mr. Tucker also completed a Medical Source Statement – Mental on August 18, 2009 in which he found that claimant was markedly limited in a number of functional categories, including, *inter alia*, the ability to remember locations and work-like procedures, ability to maintain attention and concentration for extended periods, ability to work in coordination with or proximity to others without being distracted by them, ability to interact appropriately with the general public, and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 452-53).

      State reviewing physician Dr. Dorothy Wynn, Ph.D. completed a Psychiatric Review Technique (PRT) on May 14, 2008, in which she opined that claimant had depressive syndrome characterized by appetite disturbance with change in weight and sleep disturbance (Tr. 281). Dr. Wynn thought claimant was only mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 288).

      State reviewing physician Dr. Ernestine Shires completed a Physical Residual Functional Capacity Assessment on May 21, 2008 (Tr. 292-99). She opined that claimant was capable of occasionally lifting/carrying 20 pounds, frequently lifting/carrying ten pounds, standing/walking for two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday (Tr. 293). Further, Dr. Shires found that claimant could

only frequently climb ramps and stairs, balance, kneel, and crawl and only occasionally climb ladders, ropes, and scaffolds, stoop, and crouch (Tr. 294).  Finally, Dr. Shires noted that claimant should avoid all exposure to hazards such as machinery and heights because of the medication she takes (Tr. 296).

State reviewing physician Dr. Thurma Fiegel also completed a Physical Residual Functional Capacity Assessment on September 3, 2008 (Tr. 365-72).  Dr. Fiegel's findings mirrored Dr. Shires's findings, with the following exceptions: i) claimant could stand/walk for six hours in an eight-hour workday; and ii) claimant could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl (Tr. 367).

First, the Court agrees that the ALJ improperly evaluated the opinion of claimant's counselor Mr. Paul Tucker.  Soc. Sec. R. 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [internal quotations omitted].  In this case, the ALJ states that "only acceptable medical sources can give medical opinions" (Tr. 16).  But the ALJ ignored that he is still required to evaluate Mr. Tucker's opinion in accordance with the factors as required in SSR 06-03p.

Nor was the ALJ entitled to dismiss Mr. Tucker's opinions because he was not an "acceptable medical source." *See, e. g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the questions of *severity* and *functionality*. The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.") [citations omitted].

The Court also agrees that the ALJ's analysis of the claimant's RFC is not supported by substantial evidence, because the ALJ ignored the probative evidence of claimant's degenerative disc disease, back pain, and carpal tunnel syndrome. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to mischaracterize certain medical evidence and rely only upon the evidence that supported a finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations

omitted].  The ALJ completely ignored objective medical evidence on the severity of claimant's degenerative disc disease, back pain, and carpal tunnel syndrome, *i. e.*, the findings of neurologist Dr. Juan R. Villazon, M.D.  First, with respect to claimant's back pain, it is unclear as to how the ALJ separates the claimant's severe impairment of degenerative disc disease from the pain she experiences in her back.  The ALJ wrote that the claimant "has not regularly reported muscle or joint pain" *despite* the fact that the claimant was diagnosed with fibromyalgia and repeatedly sought treatment for back and neck pain (Tr. 150, 181, 183, 195, 198, 202, 205, 432, 438).  Further, while the ALJ noted that the claimant's EMG studies of the upper and lower extremities have been normal, he also blatantly ignores that Dr. Villazon's neurological examination revealed that claimant walked with an antalgic gait and had a positive straight leg raising test and bilateral Tinel test (Tr. 265).  The ALJ also ignored that Dr. Villazon also wrote that it was "not unusual" for an EMG to appear normal in cases of small fiber neuropathy (Tr. 308).  Thus it is clear from a review of the record that the ALJ indeed engaged in improper picking and choosing among the medical evidence in his evaluation of claimant's physical impairments.

   Accordingly, the ALJ failed to properly analyze the medical evidence of record as outlined above, and the Court concludes that the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma